Rene Clover BYFORD, Plaintiff,

v.

Walt STEPHENS, individually, and City of Plantation, a municipality, Defendants.

No. 02–60374–CIV.

United States District Court, S.D. Florida.

Nov. 7, 2003.

Peter Loblack, Loblack Law Firm, Miami, FL, for Plaintiff Rene Clover Byford.

E. Bruce Johnson, Tamara M. Scrudders, Christine Maria Duignan, Johnson, Anselmo, Murdoch, Burke & George, P.A., Fort Lauderdale, FL, for Defendants City of Plantation and Walt Stephen.

*ORDER (1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND (2) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND FINAL JUDGMENT*

COHN, District Judge.

**THIS CAUSE** is before the Court on the Plaintiff's Motion for Summary Judg-

ment on the issue of Liability as to Counts I and II filed on May 16, 2002 [DE # 10] and the Defendants' Motion for Summary Judgment filed on May 30, 2003 [DE # 34]. The Court has carefully considered the Motions and the entire file of this case, and is otherwise fully advised in the premises.

## I. BACKGROUND

This action is brought by Plaintiff Rene Clover Byford against Defendant Officer Walt Stephens and the City of Plantation for alleged violations arising from Plaintiff's arrest by Officer Stephens on May 10, 2001. Specifically, Count I of Plaintiff's Complaint against Officer Stephens individually alleges that Officer Stephens arrested Plaintiff without probable cause and thereby violated Plaintiff's constitutional rights pursuant to 42 U.S.C. § 1983. Count II of Plaintiff's Complaint alleges that the Officer Stephens and the City violated state law by falsely arresting Plaintiff. Count IV of the Complaint alleges that the City is liable for negligent training and supervision.[1]

Plaintiff has moved for summary judgment on the issue of liability as to Counts I and II. Plaintiff argues that Officer Stephens is not entitled to qualified immunity as to the Count I Section 1983 claim against him individually because, according to Plaintiff, it is undisputed that probable cause did not exist for her arrest and Officer Stephens did not have a reasonable belief that he was authorized to arrest Plaintiff. For the same reasons, Plaintiff further argues that she is entitled to summary judgment on liability as a matter of law on the Count II state law false arrest claim.

Like Plaintiff, the Defendants have moved for summary judgment on the Count I and II claims for false arrest. Defendants argue both the merits of the false arrest claim, as well as the alternative argument that Officer Stephens has qualified immunity from suit. Defendants contend that the undisputed material facts show that Officer Stephens had probable cause, or at the very least *arguable* probable cause, to arrest Plaintiff, and, alternatively, Officer Stephens did not violate "clearly established law" in arresting Plaintiff.

The following are the pertinent undisputed facts viewed in the light most favorable to the Plaintiff:[2]

On May 8, 2001, the Plaintiff obtained a domestic violence injunction named "Temporary Injunction for Protection Against Repeat Violence" ("TRO") against her uncle Maurice Noicely ("Noicely"), enjoining Noicely from coming within proximity of Plaintiff. (Plaintiff's Statement of Undisputed Facts [DE # 10] ¶ 1; Complaint Ex. 1; Stephens' Answer ¶ 1; Stephens Depo. at 25 & 47). The TRO indicated on its face that it was obtained by Plaintiff without prior notice to Noicely, and was effective only after a hearing could take place, after notice to Noicely, wherein Noicely could defend himself against Plaintiff's allegations. The hearing was scheduled for May 21, 2001. (Complaint Ex. 1 at 1–2; *see also* Stephens Affidavit ¶ 4). Plaintiff was advised that she should not place herself in a position where she would be in

---

1. Count III of the Complaint "negligent performance of duty" has been dismissed without prejudice pursuant to the Plaintiff's consent. See July 1, 2002 Order dismissing Count III [DE # 22].

2. Pursuant to Southern District of Florida Local Rule 7.5, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the opposing party's statement." S.D. Fla. L.R. 7.5.

contact with Noicely after she obtained the TRO. (Plaintiff's Depo. at 82).

On May 9, 2001, the day after she obtained the TRO by claiming to be the victim of repeat violence by Noicely, Plaintiff went to the Kiddie Academy where she knew Noicely's minor daughter was enrolled in day care. (Complaint. ¶ 10; Plaintiff's Depo. at 36, 59–61). Plaintiff did not work at the Kiddie Academy and her own children were not enrolled in daycare there. (Plaintiff's Depo. at 29; Noicely Depo. at 16). Plaintiff knew that Noicely had custody of his daughter and that he would pick her up from the Kiddie Academy at "approximately" 5:30 p.m. (Complaint ¶ 10; Plaintiff's Depo. at 36 & 63).

On May 9, 2001, Noicely arrived at the Kiddle Academy to pick up his daughter at approximately 5:30 p.m. (Noicely testified that he arrived after 5:30 p.m., Noicely Depo. at 15; Plaintiff testified that upon Noicely's arrival she summoned the police, Plaintiff's Depo. at 63–65; Officer Stephens was dispatched at 5:35 p.m., Stephens Affidavit ¶ 3).

When Noicely arrived at the Kiddie Academy, Plaintiff called 911 "to report a violation of the Injunction." (Plaintiff's Statement of Undisputed Facts [DE # 10] ¶ 2; Plaintiff's Depo. at 63–67). Officer Stephens, a City of Plantation Police Offi-

cer, was dispatched to the scene pursuant to the emergency 911 call and arrived just as Noicely was driving off the premises with his daughter. (Complaint Ex. 2; Plaintiff's Depo. at 70; Stephens Affidavit ¶ 3).[3] Upon Officer Stephens' arrival, Plaintiff told him that she and Noicely "were too close" and that she "don't know how come he's (Noicely) out here driving because he doesn't have a driver's license." (Plaintiff's Depo. at 67).

Plaintiff showed Officer Stephens a copy of the TRO and Officer Stephens was "informed of Noicely's violation." (Plaintiff's Statement of Undisputed Facts [DE # 10] ¶ 2; Complaint ¶ 11; Plaintiff's Depo. at 67–68; Stephens Affidavit ¶ 4).[4] Stephens completed an Incident Report in which he recorded what the Plaintiff told him. (Stephens Depo. at 37; Complaint Ex. 2).

The following day, on May 10, 2001, Plaintiff again went to the Kiddie Academy. (Plaintiff's Depo. at 70–71). Noicely again arrived at the Kiddie Academy to pick up his daughter at approximately 5:30 p.m. (Plaintiff claims that Noicely arrived earlier than his usual time, Plaintiff's Depo. at 81; Noicely testified he arrived after 5:30 p.m., Noicely Depo. at 15–19; Plaintiff testified that upon Noicely's arrival she called 911, Plaintiff's Depo. at 75–78; Officer Stephens was dispatched at 5:38 p.m., Stephens Affidavit ¶ 10).

3. Plaintiff's Complaint alleges that "Noicely fled the scene," (Complaint ¶ 11), but Plaintiff testified in her deposition that he was not fleeing, "he was just leaving." (Plaintiff's Depo. at 69).

4. Pursuant to Plantation Police Department policy, "officers who receive and respond to a complaint involving an alleged violation of a Domestic Violence injunction shall . . . . check the restrictions imposed by the court." (Plantation Police Department General Order 28, Domestic Violence at ¶ 11, Plaintiff's Response in Opposition to Defendant's Motion For Summary Judgment [DE # 40], Ex. 1).

Additionally, pursuant to Plantation Police Department policy, "Officers shall arrest without warrant when there is probable cause to believe that the person has knowingly committed an act in violation of an injunction for Protection pursuant to FSS 741.30 or 784.046, over the objection of the petitioner, if necessary. FSS 741.31 will be used to charge the respondent." (*Id.* at ¶ 7.D). The Policy further states, "No law enforcement officer shall be held liable, pursuant to FSS 901.15(7), for an arrest based on probable cause." (*Id.* at ¶ 7.B).

Plaintiff again summoned the police on an emergency basis by dialing 911 "to report a violation of the injunction by Noicely." (Plaintiff's Statement of Undisputed Facts [DE # 10] ¶ 3; Plaintiff's Depo. at 78–80; *see also* Complaint ¶ 11 (alleging that, "Fearing a repeat of the May 9, 2001 confrontation, and Noicely's past threats of violence, the Plaintiff, fearing for her safety, called the Police to report Noicely's apparent violation of the injunction issued for her protection")). Although Plaintiff alleged in her Complaint that she "called the Police for her protection" because of "a previous confrontation the prior day, May 9, 2001, when Noicely in a rage approached the Plaintiff in violation of the Injunction" (Complaint ¶ 11), in her deposition, Plaintiff admitted that she and Noicely had no contact at the Kiddie Academy on either May 9 or May 10, 2001. (Plaintiff's Depo. at 63–64, 73, & 75–76). Indeed, Plaintiff admitted that she and Noicely were never even in the same room and that Noicely never threatened her on either of those two days. (*Id.*).

Officer Stephens again reported to the scene and reviewed Plaintiff's TRO. (Complaint ¶ 11; Plaintiff's Depo. at 85–86; Stephens Affidavit ¶ 11). Plaintiff conceded in her deposition that she could not recall her exact words to Officer Stephens after she summoned the police on an emergency basis, but that she said something like, "I have a restraining order against him [Noicely]," and then presented the TRO to Officer Stephens. (Plaintiff's Depo. at 85). As Plaintiff testified in her deposition:

Q: When the police officer arrived . . . what did you tell him?

A: I told him that I—I was—I don't remember, I don't remember the exact words that I told him.

Q: Well, I'm not asking for exact words, but what did you tell the police officer? You had called for a police officer.

. . . . .

A: Right, I have a restraining order against him [Noicely], he asked to see it, I showed him; and then I told him that—again, that he [Noicely] didn't have a driver's license, why is he on the road? And then, I said, you know, I—I just—I was ready to go by then, and then I—he told me to wait there . . . .

(Plaintiff's Depo. at 85–86). Officer Stephens testified that Plaintiff told him that Noicely violated the injunction and that she was insistent that she wanted Noicely arrested. (Stephens Depo. at 35; Stephens Affidavit ¶¶ 11–12). Plaintiff does not directly dispute this testimony but makes the point that she was told by a social worker in family court and by Officer Stephens (on May 9, 2001) to call the police "[whenever [she] came into contact with Noicely at any location]" and that, "[b]ecause on May 9 and May 10, 2001 Noicely and I were at the same location, I called 911 to report that I have a restraining order and that we are the same location." (Plaintiff's Affidavit ¶¶ 4–5; Plaintiff's Depo. at 54, 73–74). She testified in her deposition that when she called the emergency 911 number on May 9, 2001, she was informed by the 911 operator that a police officer would be sent out and that she should wait for him. (Plaintiff's Depo. at 66).

After having picked up his daughter from inside the Kiddie Academy, Noicely walked outside to his vehicle, which was parked on the North side of the building. At that time he was approached and questioned by Officer Stephens. (Noicely Depo. at 15–16; Stephens Affidavit ¶ 13; Stephens Depo. at 35; Plaintiff's Depo. at 86). Noicely was unaware that Plaintiff was on the premises before he was approached by Officer Stephens. (Noicely

Depo. at 16–17). Noicely produced a Court Order proving that he had been granted custody of his daughter, who was with him, and that he was legitimately (and required to be) on the premises to pick her up. Noicely also pointed out that the TRO did not prohibit him from picking up his daughter and that he was there at his normal time. (Noicely Depo. at 16; Stephens Depo. at 35; Stephens Affidavit ¶ 13). Noicely further stated to Officer Stephens that Plaintiff did not have a child enrolled at the Kiddie Academy and had no reason to be there waiting for him to pick up his daughter. (Noicely Depo. at 16; Stephens Affidavit ¶¶ 14–16).[5]

Officer Stephens arrested the Plaintiff at 6:18 p.m. for violation of the TRO. (Stephens Depo. at 35 & 40–42; Complaint Ex. 3). The Plaintiff was handcuffed, placed in Officer Stephens' patrol car and, after a stop at the City of Plantation Police Department where Stephens had the opportunity to review the law and his department policy and procedures, transported to the Broward County Jail, where she was booked on one count for violating the TRO. (Stephens Depo. at 42–44; Complaint Ex. 4). The Plaintiff was detained for three days at the Broward County Detention Center before posting bond. (Plaintiff's Depo. at 100).

Plaintiff did not appear for the hearing regarding the TRO on May 21, 2001, and the matter was dismissed. (Noicely Depo. at 20).

Officer Stephens stated in his deposition that the only reason he arrested Plaintiff was because he believed she was violating the TRO. (Stephens Depo. at 40–41 & 49). He further testified that he interpreted the TRO to provide that either party could violate the injunction and that he believed that Plaintiff was in violation. (Stephens Depo. at 24, 52). The language of the TRO at issue states that "any party violating this injunction may be ... charged with a crime punishable by a fine, jail, or both." (Complaint Ex. 1; Massey Depo. at 42). The TRO further indicates that Plaintiff had sworn that she had been the victim of repeat violence at the hands of Noicely, and that she believed he presented an immediate and present danger. (Stephens Affidavit ¶ 4).[6]

## II. DISCUSSION

### A. Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After the movant has met its burden under

---

5. Noicely testified that he believed that the Plaintiff was at the Kiddie Academy to set him up or to entrap him into being in violation of the TRO. (Noicely Depo. at 22–23).

6. The Court does not consider Officer Stephens' testimony that Ms. Byford told him on May 9, 2001, that "a police officer had told her how to 'set up' Maurice Noicely to get

arrested," (Stephens Affidavit ¶ 6), because Plaintiff disputes this testimony on summary judgment. (Plaintiff's Affidavit ¶ 2). Plaintiff does *not* appear in the record to dispute that she told Officer Stephens on May 9, 2001 that "she did not want Noicely to have custody of a child that was enrolled at the Kiddie Academy." (Stephens Affidavit ¶ 6).

Rule 56(c), the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608.

The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted) (if the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted"); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). Any doubts in this regard should be resolved against the moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

## B. *Qualified Immunity Under Section 1983*

The primary issue on summary judgment is whether Defendant Officer Stephens is protected from suit by qualified immunity. "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir.2002) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir.2002) (internal quotation marks and citations omitted).

To receive qualified immunity, "the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee*, 284 F.3d at 1194 (internal quotation marks and citations omitted). The burden then shifts to the plaintiff to show that "qualified immunity is not appropriate." *Id.*

The Supreme Court has set forth a two-part test for qualified immunity. "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (*citing Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. However, "[i]f a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.'" *Vinyard*, 311 F.3d at 1346 (*quoting Saucier*, 533 U.S. at 201, 121 S.Ct. 2151).

### 1. *Constitutional Violation*

In this case, the parties do not dispute that Officer Stephens was acting within

the course and scope of his discretionary authority when he arrested Plaintiff. Accordingly, "the burden shifts to [Plaintiff] to show that qualified immunity is not appropriate." *Lee,* 284 F.3d at 1194.

Plaintiffs argue that Officer Stephens is not entitled to qualified immunity because he did not have probable cause to arrest Ms. Byford. However, to successfully assert qualified immunity in a Section 1983 false arrest claim, "an officer need not have actual probable cause but only 'arguable probable cause.'" *Montoute v. Carr,* 114 F.3d 181, 184 (11th Cir.1997) (citations omitted); *see also Post v. City of Ft. Lauderdale,* 7 F.3d 1552, 1558 (11th Cir. 1993) ("When an officer asserts qualified immunity, the issue is not whether probable cause existed in fact, but whether the officer had 'arguable' probable cause to arrest.").

The standard for arguable probable cause is "whether a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well-established law." *Gold v. City of Miami,* 121 F.3d 1442, 1445 (11th Cir.1997); *see Montoute,* 114 F.3d at 184 ("the inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed"); *see also Lee,* 284 F.3d

at 1195; *Rankin v. Evans,* 133 F.3d 1425, 1435 (11th Cir.1998); *Post,* 7 F.3d at 1558.

Defendants argue that summary judgment is warranted in their favor because there is no genuine issue regarding the material fact that Officer Stephens had arguable probable cause to arrest Plaintiff for falsely reporting a crime. The dispositive issue on summary judgment is whether the facts presented to Officer Stephens at the time of the incident *could* have led a reasonable police officer to believe that Plaintiff knowingly falsely reported the commission of a crime. *See Gold,* 121 F.3d at 1445.[7] Even viewing the facts in this case in the light most favorable to the Plaintiff, Defendants argue that there is no dispute of material fact regarding this issue. In light of the record in this case, this Court agrees:

 Officer Stephens was called on an *emergency* 911 basis by the Plaintiff, a person with a TRO dated May 8, 2001, who to get that TRO had made statements under oath that indicated that she was "a victim of repeat violence" facing "an immediate and present danger of repeat violence" by Noicely. (TRO at 2, Complaint Ex. 1). Despite having obtained a TRO to keep the "danger" of Noicely away from her, the very next day, May 9, 2001, Plaintiff went to where Noicely's daughter was in day care and was present upon Noicely's arrival to pick up his child. She summoned the police on an emergency basis and told the police officer that Noicely

---

7. "Qualified immunity is a question of law for the courts, even when asserted on summary judgment .... The plaintiff opposing summary judgment has the burden of showing that a genuine dispute on a material fact exists. Conclusory allegations or evidence setting forth legal conclusions are insufficient to meet the plaintiff's burden .... To avoid summary judgment it is not enough for a plaintiff to produce evidence, which—if believed (for summary judgment its truth is assumed)—would allow a fact-finder to find just

that the government-agent defendant was, in reality, wrong about the facts on which the defendant acted. Instead, to defeat summary judgment because of a dispute of material fact, a plaintiff facing qualified immunity must produce evidence that would allow a fact-finder to find that no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts." *Post v. City of Ft. Lauderdale,* 7 F.3d 1552, 1557 (11th Cir.1993).

violated the injunction. The very next day, May 10, 2001, Officer Stephens again responded to another *emergency* 911 call from the Plaintiff, who again made herself present at the exact same time as the previous day at the daycare of Noicely's daughter, when she knew Noicely would be arriving to pick up his child. Officer Stephens interviewed Noicely, who produced a custody order and proved that he was legitimately on the premises. Plaintiff meanwhile had no apparent legitimate reason to be at the daycare—she neither worked there nor had custody of children enrolled there.[8] Under these circumstances, where an individual obtained a TRO on one day and then shows up for two consecutive days at a time and place where she knows the "dangerous" person who is the subject of the TRO will be, or is likely to be, a reasonable officer *could* have concluded that Plaintiff knowingly falsely reported that Noicely violated the injunction.[9]

■ In any event, to have probable cause, an arresting officer is not required to prove every element of a crime or obtain a confession before making an arrest, which "would negate the concept of probable cause and transform arresting officers into prosecutors." *Lee*, 284 F.3d at 1195. Officer Stephens was not required to have a confession from the Plaintiff that she knowingly made false reports or to have conclusive proof on every element of the crime. "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (internal quotation marks and citations omitted). "As the Supreme Court has stated, [t]he qualified immunity standard gives ample room for mistaken judgments." *Gold*, 121 F.3d at 1446 (internal quotation marks omitted) (*citing Hunter*, 502 U.S. at 229, 112 S.Ct. 534). "This accommodation exists because 'officials should not err always on the side of caution' because they fear being sued." *Gold*, 121 F.3d at 1446.

The only issue is whether, under the circumstances, a reasonable officer *could* have had probable cause to believe Plaintiff falsely reported Noicely violated the TRO, thereby violating the TRO, and/or Sections 817.49 and/or 837.05, Florida Statutes which make it a crime to falsely report the commission of a crime. It does not matter that Officer Stephens in this

---

**8.** Plaintiff counters that she was a the daycare to check on Noicely's daughter; that prior to Noicely obtaining custody of his daughter on May 8, 2001, Plaintiff and her grandmother took care of her; and that the daycare was the only place they were permitted to see the child. She also states that the daycare is located at her family church and that she "always visit[s] the church." (Plaintiff's Affidavit ¶ 3; Complaint ¶ 10). However, the issue regarding qualified immunity is not whether Plaintiff could or could not visit the child, the issue is whether, Plaintiff having obtained a TRO on May 8, 2001, and having gone to the daycare on May 9 and May 10, 2001, at the exact time that Noicely would be picking up his child, and having called the police on an *emergency* basis on both days, and having reported that Noicely violated the injunction when he was simply there to pick

up his daughter, a reasonable officer could have concluded that there was cause to believe that Plaintiff was falsely reporting a crime.

**9.** Officer Stephens testified that subsequent to the arrest, Sergeant Hager of the Plantation Police Department brought to Officer Stephens' attention that Stephens "would have been better off not effecting an arrest" and that his arrest of the Plaintiff stirred up a homets' nest in the Police Department. (Stephens Depo. at 49–50). However, this does not change that under the circumstances presented to Officer Stephens at the time of the arrest, a reasonable officer *could* have concluded that Plaintiff knowingly falsely reported that Noicely violated the injunction.

case arrested Plaintiff because he believed she was violating the TRO by falsely reporting that Noicely violated the TRO. "Even if a police officer arresting a person cites the wrong charge or offense, the test is whether there is any objective basis for the arrest for any crime." *Byford v. Stephens, City of Plantation, unpublished decision* [DE # 33] at 10 (11th Cir. April 11, 2003) (noting that at the dismissal stage in this case, "the parties have focused on only whether Byford violated the terms of the protective order and not on whether Byford may have arguably violated Florida law in some other manner, such as falsely reporting a crime. *See* Fla. Stat. Ann. § 817.49 (2000)"); *see also Lee*, 284 F.3d at 1195–96.

Under Florida law, it is a crime to knowingly make a false report concerning the alleged commission of a crime to a police officer. Specifically, under Section 817.49, Florida Statutes,

> Whoever willfully imparts, conveys or causes to be imparted or conveyed to any law enforcement officer false information or reports concerning the alleged commission of any crime under the laws of this state, knowing such information or report to be false, in that no such crime had actually been committed, shall upon conviction thereof be guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.83.

Fla. Stat. § 817.49. Similarly, under Section 837.05, Florida Statutes, "whoever knowingly gives false information to any law enforcement officer concerning the alleged commission of any crime, commits a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083." Violations of Sections 817.49 and/or 837.05 are punishable by up to one year imprisonment. *See* Fla. Stat. § 775.082(4)(a).

Moreover, "under both *Atwater* [*v. City of Lago Vista*, 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001)] and Florida law . . . a full custodial arrest is allowed when a misdemeanor has been committed." *Lee*, 284 F.3d at 1196–97 (citing Fla. Stat. § 901.15(1) ("A law enforcement officer may arrest a person without a warrant when . . . [t]he person has committed a felony or misdemeanor . . . in the presence of an officer.")). The arrest in this case was lawful, and Plaintiff cannot prevail on a Fourth Amendment claim based on Officer Stephens' decision to take her into custody. Accordingly, Officer Stephens is entitled to qualified immunity on Plaintiff's wrongful arrest claim and summary judgment is appropriate under the first prong of *Saucier*, 533 U.S. 194, 121 S.Ct. 2151.

### 2. *"Clearly Established" Law*

In the alternative, even if it could be said that Officer Stephens lacked arguable probable cause for Plaintiff's arrest, this Court finds that he is still entitled to qualified immunity because he did not violate any clearly established law by arresting Plaintiff. For an asserted right to be clearly established for purposes of qualified immunity, "its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'" *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (internal citations omitted). As the United States Supreme Court has made clear, "qualified immunity operates 'to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful.'" *Hope*, 536 U.S. at 739, 122 S.Ct. 2508 (*quoting Saucier*, 533 U.S. at 206, 121 S.Ct. 2151).

The Eleventh Circuit has further explained the *Hope* and *Saucier* "clearly established" standard in the context of summary judgment as follows:

> In *Saucier*, the Supreme Court emphasized that determining whether a constitutional right was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition .... The relevant, dispositive inquiry in determining whether a right is *clearly* established is whether it would be *clear* to a reasonable officer that his conduct was unlawful in the situation he confronted. *Saucier* further instructs that [i]f the law did not put the officer *on notice* that his conduct would be *clearly* unlawful, summary judgment based on qualified immunity is appropriate. Shortly after *Saucier*, the Supreme Court reiterated in *Hope v. Pelzer* that the salient question ... is whether the state of the law ... gave [the officers] *fair warning* that their alleged treatment of [the plaintiff] was unconstitutional.

*Vinyard*, 311 F.3d at 1349–50 (internal quotations and citations omitted).

██ Here, no case law has been presented that "involved materially similar facts or facts that gave a reasonable police officer in [Stephens'] situation fair and clear warning that the conduct here ... violated the Constitution." *Vinyard*, 311 F.3d at 1355. Plaintiff cites *St. John v. Coisman*, 799 So.2d 1110 (Fla. 5th DCA 2001) as prior decisional law. However, the issue in that case was whether the Florida statute capping punitive damages applied where a husband sued a police officer who had arrested the husband for purportedly violating a domestic violence injunction while the husband was in fact legitimately attempting to exercise his visitation rights with his children. It did not involve the issue of whether a police officer could arrest the party for whose protection a temporary restraining order was issued where the police officer believed that that party had falsely reported a violation of the restraining order.

Plaintiff further points to the Eleventh Circuit's opinion affirming this Court's order on dismissal in this case, *Byford v. Stephens, City of Plantation, unpublished decision* [DE # 33] (11th Cir. April 11, 2003), as being dispositive that Officer Stephens violated a clearly established right. However, in that opinion, the Eleventh Circuit noted that, although there was no clear term in the TRO restraining Plaintiff, evidence as to reasonable custom, training, practice and Officer Stephens' review and understanding of the specific language in the TRO was necessary to decide the issue. *See* DE # 33 at 9. Plaintiff has presented the Plantation Police Department procedures which call for police officers to govern their decisions as to whether a TRO has been violated by examining the terms of the specific injunction at issue.[10] But it is undisputed that Officer Stephens examined the TRO and that he interpreted the TRO to provide that either party could violate the injunction.

Furthermore, Plaintiff does not appear to dispute the deposition testimony of Deputy Chief Larry Massey, Jr. supporting that a reasonable officer could have concluded that Plaintiff could be arrested for violating the TRO. Specifically, Deputy Massey testified that the TRO at issue contains "a no-contact provision" preceding which "it says, '[a]ny party violating this injunction may be subject to civil or indi-

---

**10.** *See* Plantation Police Department General Order 28, Domestic Violence at ¶ 11, Plaintiff's Response in Opposition to Defendant's Motion For Summary Judgment [DE # 40], Ex. 1.

rect criminal contempt' . . . . So if they are not to have any contact and the petitioner specifically violates this to go to a place where they knew the respondent would be, one could conclude that there was a violation of this injunction." (Massey Depo. at 41–42). Plaintiff also does not appear to dispute that prior to arresting Plaintiff, Officer Stephens consulted with his backup, Officer Wade Wilcock, "who reviewed the TRO and agreed based on the facts presented that there was probable cause for arrest for the violation." (Stephens Affidavit ¶ 20).

Plaintiff has produced no evidence from any other police officer to establish otherwise. Plaintiff has offered testimony that subsequent to Officer Stephens' arrest of Plaintiff, Sergeant Hager of the Plantation Police Department indicated to Stephens that he "would have been better off not effecting an arrest" and that Officer Stephens' arrest of the Plaintiff stirred up a hornets' nest in the Police Department. (Stephens Depo. at 49–50). However, this does not refute Deputy Chief Massey's testimony or Officer Stephens' testimony regarding Officer Wilcock.

In any event, even if Officer Stephens was mistaken in his belief that he could arrest the Plaintiff for violating the TRO, the Supreme Court in *Saucier* pointed out, "[i]f the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense." *Saucier*, 533 U.S. at 205, 121 S.Ct. 2151. The unrefuted testimony of Deputy Chief Massey in conjunction with Officer Stephens' testimony that Officer Wilcock agreed with him that there was probable cause to arrest Plaintiff supports that any mistake by

Officer Stephens as to whether he could arrest the Plaintiff for violating the TRO was reasonable. .

Ultimately, Plaintiff simply has not presented any controlling legal authority that on May 10, 2001 would have informed Officer Stephens that the Plaintiff could not be arrested for falsely reporting a violation of the TRO at issue.[11] Nor has Plaintiff shown that Officer Stephens' conduct "lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to [Officer Stephens], notwithstanding the lack of fact-specific case law." *Vinyard*, 311 F.3d at 1355 (quoting *Lee*, 284 F.3d at 1199, internal quotation marks omitted) (holding that "no objectively reasonable police officer could believe that, after Vinyard was under arrest, handcuffed behind her back, secured in the back seat of a patrol car with a protective screen between the officer and the arrestee, an officer could stop the car, grab such arrestee by her hair and arm, bruise her and apply pepper spray to try to stop the intoxicated arrestee from screaming and returning the officer's exchange of obscenities and insults during a short four-mile jail ride").

Summary judgment in favor of Defendants is warranted.

### III. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that:

1. Defendants' Motion for Summary Judgment [DE # 34] with respect to Plaintiff's federal Section 1983 claim

---

11. Indeed, under Florida law, it is a crime to knowingly make a false report concerning the alleged commission of a crime to a police officer. *See* Fla. Stat. §§ 817.49 & 837.05. Violations of Sections 817.49 and 837.05, Florida Statutes, are misdemeanors in the first degree. "Under both *Atwater* [*v. City of Lago Vista*, 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001)] and Florida law . . . a full custodial arrest is allowed when a misdemeanor has been committed." *Lee*, 284 F.3d at 1196–97 (citing Fla. Stat. § 901.15(1)).

(Count I) is hereby **GRANTED**. Plaintiff's federal claim (Count I) is hereby **DISMISSED** with prejudice.

2. Plaintiff's Motion for Summary Judgment on the Issue of Liability as to Counts I and II [DE # 10] is hereby **DENIED**.

3. The Court, pursuant to 28 U.S.C. § 1367(c)(3), hereby declines to exercise supplemental jurisdiction over Plaintiff's state law claims for false arrest and negligent training and supervision (Counts II and IV). 28 U.S.C. § 1367(d) provides that the statute of limitations is tolled while state claims are pending in federal court until thirty days after an order of dismissal. Therefore, Plaintiff may pursue her state claims in state court if she so chooses, as long as she files in a timely manner. Plaintiff's state law claims are hereby **DISMISSED** without prejudice.

4. Judgment is hereby entered in favor of Defendants Walt Stephens and City of Plantation and against Plaintiff Rene Clover Byford, as is stated above. Plaintiff shall take nothing by this action and Defendants shall go hence without day.

5. This action is hereby **DISMISSED**;

6. Any other pending motions are hereby denied as **MOOT**;

7. The Clerk of the Court is directed to **CLOSE** this case.